IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIM LASSITER-WADDELL<br><br>vs.<br><br>J.C. PENNEY COMPANY, INC. AND J.C. PENNEY | Civil Action<br>No. 02 - 3213 |

## DEFENDANTS' SETTLEMENT CONFERENCE SUMMARY

COUNSEL ATTENDING SETTLEMENT CONFERENCE:

    Name:    Daniel J. McCarthy, Esquire

    Address:    22 Fl, 1528 Walnut Street, Philadelphia, PA 19012

    Phone:    (215) 735-7200

    Client:    J.C. Penney, Inc. and J.C. Penney

CLIENT ATTENDING SETTLEMENT CONFERENCE:
Name of Individual with Ultimate Settlement Authority
who will be present at the settlement conference:   Miriam Kaikov of Liberty Mutual Ins. Company.

MOTIONS PENDING:

    None

STATUS OF DISCOVERY:

    Various medical records regarding a motor vehicle accident of May 26, 2000 have recently been received. These have been forwarded to those expert witnesses retained by the defendant.

OTHER RELEVANT MATTERS:

<u>None</u>

PRIOR OFFERS/DEMANDS:

<u>Demand for Settlement as of December 26, 2002: $390,000.00</u>

<u>Settlement Offer made: -0-</u>

## **SYNOPSIS OF CASE**

STATEMENT OF FACTS:

On December 2, 2000, plaintiff was on the premises of the defendant as a business invitee when a small plexiglass sign holder allegedly fell and struck plaintiff's head and face. Plaintiff did not fall to the ground. However, as a result of the alleged negligence of the defendant, plaintiff claims that she suffered a post-concussion syndrome with ongoing severe headaches, episodes of left sided paralysis, herniated disc at L4-5 with impingement on the nerve root causing a left lumbar radiculopathy, arthroscopic surgery of the left knee involving resection of the medial synovial plica and chondroplasty of the medial femoral condyle, and permanent blood streak in the right eye with scarring of the right eyelid.

PROOF OF DAMAGES (DEFENSE):

1. According to Defendant's loss prevention officer, Andrew Smith, he observed a scrape and swelling on plaintiff's eye. Plaintiff requested some ice and refused further medical treatment, including an ambulance. He did not recall plaintiff being in any particular distress as she

was able to assist him in completing the incident report. (A true and correct copy of the incident report prepared by Andrew Smith dated December 2, 2000 is attached hereto and marked as Exhibit "A").

2. Defendant's orthopedic expert, William H. Simon, M.D. performed an examination of plaintiff on June 10, 2003 and found no objective residuum of any trauma sustained on December 2, 2000. However, Dr. Simon found significant impairment to her head, neck and low back from a motor vehicle accident on May 26, 2000. Plaintiff was treated by Hunter R. Novak, a chiropractor for this prior incident. She also received emergent care at the Thomas Jefferson Hospital where she complained of "top of head pain and funny sensation left side of face, some neck tenderness and lower back pain, severe headaches". Dr. Simon notes that in Dr. Novak's report of May 30, 200, 4 days after the motor vehicle accident, the plaintiff was complaining of "headaches, nausea, tooth pain, left shoulder pain and stiffness, low back pain and stiffness, right knee pain, right leg pain and left sided face and neck pain". Moreover, upon review of her voluminous medical records, Dr. Simon also noted that plaintiff did not advise any of her treating medical providers relative to subject incident of December 2000 about her prior motor vehicle accident.

Plaintiff presented to Dr. Simon with complaints of head pain. Upon physical examination, Dr. Simon found no tenderness on palpating the trapezius muscles or lateral paracervical muscles or on lateral compression or vertical compression of the cervical spine. There was no leg discrepancy or atrophy of the thigh or calf. There was no effusion on either knee, no joint line tenderness. Quadriceps and hamstring power was normal bilaterally. Regarding the upper extremities, there was no obvious atrophy of upper arm or forearm, no intrinsic or extrinsic atrophy of the hands. Plaintiff made a good fist bilaterally and had good grip strength bilaterally. There was normal motion, active and passive about all the fingers of the hands. Regarding the spine, there was

no tenderness from the cervical spine to the lumbosacral spine. There was some weakness of her left extensor hallucis longus which Dr. Simon opined was a partially subjective finding. Dr. Simon notes that a lumbar MRI taken on December 20, 2000 indicated a small left sided L4-5 disc herniation; however, Dr. Simon opines that "the plastic that struck her head **did not** cause a left sided disc herniation. There was no evidence that plaintiff sustained an injury to her lumbar spine on December 2, 2000.

Upon review of the medical records, Dr. Simon noted record from Dr. Walter Harris dated December 8, 2000 regarding an examination of plaintiff's eyes. There was no information that the visit was an emergency visit nor that it was specifically related to the subject incident.

Dr. Simon further found absolutely no history of trauma to plaintiff's knees in the December 2, 2000 incident. Dr. Simon states that the findings were a plica semilunarus which is a **congenital abnormality in the knee totally unrelated to trauma**. Dr. Simon further opines that chondral lesions on the medial femoral condyle and medial facet of the patella would indicate patellofemoral arthritis or chondromalacia and are not the result of any one episode of trauma.

Dr. Simon further notes an evaluation report by Dr. Stephen Boyajian, a pain management specialist who indicated that "based on patient's display of some abnormal pain related behavior throughout the examination process as demonstrated by wincing and grimacing upon performance of typically non-painful maneuvers, and the fact that the patient has a significant work up with **no identifiable organic etiology** to her symptom complex, consideration for a conversion reaction needs to be addressed". According to Dr. Simon, a conversion reaction is a condition in which a patient imagines that they have a medical problem and presents symptoms that are non-physiologic and non-anatomic; a mental condition and not a bodily condition.

In a report dated December 19, 2000, prepared by Dr. Brad Tinkleman, a neurologist, it is

indicated that "three weeks ago she was in a store when a small plexiglass sign fell and hit her on the top of the right head and made a small laceration under the right eye. There was no loss of consciousness and she **recovered without any further symptoms.**

A new MRI of the cervical spine performed on July 27, 2002 showed trace spondoytic changes with mild reversal of the normal cervical lordosis at C4. Dr. Simon opines that said study reveals early arthritis in her neck. (A true and correct copy of the reports of Dr. William H. Simon dated June 10, 2003 and July 1, 2003 are attached hereto and marked as Exhibit "B".

3.   The report of Defendant's neuropsychiatric report of Stephen N. Berk, Ph.D., who examined the plaintiff on June 12, 2003, has not been received by defense counsel as of yet and will be submitted upon receipt prior to the settlement conference.

4.   The report of Defendant's vocational expert, Jasen M. Walker, Ed.D. will be submitted upon receipt prior to the settlement conference. Due to rescheduling, Dr. Walker's examination of the plaintiff took place on July 7, 2003.

        Respectfully submitted,

        MINZTER, SAROWITZ, ZERIS,
        LEDVA & MEYERS

        BY:_____
           DANIEL J. McCARTHY, ESQUIRE
           Attorney for Defendant(s)