IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KIM LASSITER-WADDELL,

           vs.

J.C. PENNEY COMPANY, INC. AND J.C. PENNEY

Civil Action No. 02 CV 3213 (MAM)

---

**DEFENDANTS' MOTIONS IN LIMINE TO PRECLUDE PROPOSED TESTIMONY FROM PLAINTIFF'S EXPERT, ROGER E. FARBER, M.D., AND TO PRECLUDE PLAINTIFF'S TESTIMONY REGARDING HER CLAIM OF A RIGHT EYE INJURY**

---

      Defendant, J.C. Penney Company, Inc., by and through its attorneys, Mintzer, Sarowitz, Zeris, Ledva & Meyers, files these Motions in Limine to preclude certain testimony from Plaintiff's expert witness, Roger E. Farber, M.D. and to preclude certain testimony from Plaintiff regarding a claim of a right eye injury. In support of this Motion, Defendant avers as follows:

1.    Plaintiff filed the instant suit against J.C. Penney Company, Inc. claiming that on or about December 2, 2000, she was a business invitee on the premises of the defendant when a sign allegedly fell and struck her. (A true and correct copy of Plaintiff's Complaint is attached hereto as Exhibit "A").

2.    As a result of the incident, plaintiff has alleged that she suffers from the following injuries: post-concussion syndrome with on-going severe headaches, episodes of left sided paralysis, a herniated disc at L4-5 with impingement on the nerve root causing a left lumbar radiculopathy, arthroscopic surgery of the left knee involving resection of the medial synovial plica and chondroplasty of the medial femoral condyle, and a permanent

        blood streak in the right eye with scarring of the right eyelid.

3.     Plaintiff served various medical reports on defendant, including two (2) reports authored by Roger E. Farber, M.D., dated May 21, 2002 and July 9, 2003. According to his letterhead, Dr. Farber specializes in treatment of headaches and neurologic pain, general neurology, and neurosonology. (True and correct copies of Dr. Farber's reports, dated May 21, 2002 and July 9, 2003 are attached hereto as Exhibits "B" and "C", respectively.)

4.     Dr. Farber, in his report dated May 21, 2002, states, <u>inter alia</u>, the following history:

> "Kim is a 33 year old. December 2, 2000 she was hit by a big block a couple inches thick with metal around the outside. It fell many feet, probably 20-30 feet, from the ceiling of a shopping center and was hit in the right occipital and also over the frontal area; some hemorrhage in and around the eyes and did not require sutures. She could not see out of that eye for a while. ... On MRI of the head, they saw swelling of her brain; she cannot find the films or the reports..."

(See Exhibit "B").

5.     Based upon the examination of plaintiff, her history and complaints, on May 21, 2002, Dr. Farber believed that plaintiff was suffering from occipital nerve neuralgias and treated plaintiff with series of auriculotemporal and occipital nerve blocks. Dr. Farber also noted that plaintiff is not having diplopia, nor true vertigo, nor major extremity symptoms at that point. (See Exhibit "B").

6.     In his report on July 9, 2003, Dr. Farber, amended his report and stated, <u>inter alia</u>, as follows:

> "I am responding to your request of June 24, 2003. I have reviewed all of the considerable records you sent in my direction. This woman first saw me on May 21, 2002. In December 2, 2000, she said that there was a block that fell from the ceiling; metal was around the outside of this. It was plexi-glass but struck her hard causing some degree of laceration. It struck her hard causing some degree of laceration. It struck her on the right occipital, then veered forward over the face. She did have some swelling and closure of one eye and was markedly shaken up

by the whole affair. She said that an MRI stated that she had swelling of her brain, but the report does not reflect that, nor does the CAT scan show anything abnormal in her head. The spine MRI is said to show a small L4-5 disc herniation but nothing in the thoracic and cervical spines. She has noted that her legs would keep giving out on her. She has pain every day in right greater occipital nerve distribution..."

(See Exhibit "C").

7. On July 9, 2003, Dr. Farber, a neurologist, diagnosed plaintiff with post-traumatic stress disorder, noting that plaintiff was experiencing "a great deal of psychic stress".

(See Exhibit "C").

8. Therefore, Dr. Farber, in report of July 9, 2003, concluded:

"She is a bright woman and well motivated to get well but still has that portion of her complaints that are the post-traumatic stress complaints, that need to be addressed. All of this is due to the incident at J.C. Penny's with the object falling and hitting her; and all opinions are expressed to a reasonable degree of medical certainty."

(See Exhibit "C").

9. In <u>Daubert v. Merrell Dow Pharmaceuticals</u>, Inc., 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the United States Supreme Court addressed the admissibility of expert scientific evidence under Rule 702 of the Federal Rules of Evidence.

10. Federal Rules of Evidence 702 governs testimony by experts and reads as follows:

If scientific, technical or other specialized knowledge beyond a lay person will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product or reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

11. In <u>Daubert</u>, the Supreme Court explained that the language of Rule 702 requiring the expert to testify to scientific knowledge means that the expert's opinion must be based on the "methods and procedures of science" rather than on "subjective belief or unsupported

speculation". <u>Daubert</u>, 113 S.Ct. at 2795.

12. Therefore, under <u>Daubert</u>, the trial court must engage in a two-step inquiry: (1) the proffered expert must be qualified to express an opinion and (2) the proffered expert opinion must be reliable. <u>Id.</u>; <u>In re TMI Litig.</u>, 193 F.3d 613, 663 (3rd Cir. 1999).

13. Pursuant to Federal Rules of Evidence 104(a), the trial court must make a preliminary determinations whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. See <u>Daubert, supra.</u>

14. The preliminary task insures that the testimony meets a minimum threshold of reliability and relevance. <u>Holbrook v. Lykes Bros. Steamship Co., Inc.</u>, 80 F.3rd 777, 780 (1996).

15. Pursuant to 104(a), the trial court also shall determine whether the testimony to be given is admissible under F.R.E. 702.

16. Plaintiff's proposed expert testimony by Dr. Farber as set forth in his reports regarding his diagnosis of "post traumatic stress disorder" and causal relationship is not admissible under F.R.E. 702 because 1) Dr. Farber is not qualified as an expert in the field of psychology and/or psychiatry and should not be permitted to testify with respect to any causal relationship between plaintiff's symptoms and/or his diagnosis and the conduct of defendant in this case.  2) Dr. Farber's opinions are based on inaccurate factual evidence and should be deemed unreliable and irrelevant as plaintiff never asserted claims of post traumatic stress syndrome at her deposition.  Furthermore, no other doctors make such a history of psychologic injury arising from the incident in question.

17. Moreover, plaintiff has never produced Dr. Farber's Curriculum Vitae within the discovery period in support of Dr. Farber's qualifications as an expert in the field of

neurology or even in the field of psychology/psychiatry.

18. Because Dr. Farber's reports represent nothing more than net opinions on the issue of medical causal relationship, Dr. Farber should not be permitted to testify as an expert in this matter as to any type of psychological injury.

19. Plaintiff's proposed expert testimony by Dr. Farber as set forth in his reports regarding his diagnosis of "occipital nerve neuralgias" and causal relationship is also not admissible under F.R.E. 702 because all his opinions are based on a completely erroneous history as to how the incident alleged occurred or as to the results of diagnostic testings, specifically the MRI of the brain which he stated revealed "swelling of the brain".

20. According to Plaintiff's Complaint, plaintiff was allegedly struck by a sign and not a "big block a couple inches thick" which supposedly fell approximately 20 to 30 feet from the ceiling, which Dr. Farber indicates in his report of May 2002. (See Exhibits "A" and "B"). Dr. Farber, in his July 2003 report, finally noted that the MRI and CT scan of the brain were normal. (See Exhibit "C").

21. Additionally, Dr. Farber notes in his report of July 2003, "She is a person who has not been injured before, but on examination now had significant tenderness in both greater occipital nerves an increased tone and tenderness in both of the trapezii." (See Exhibit "C").

22. To the contrary, plaintiff's medical documents show that plaintiff did sustain pre-existing injuries and was under treatment for same resulting from a motor vehicle accident on May 26, 2000, approximately seven (7) months prior to the incident in question. (A true and correct copy of defendant's expert report of Dr. William H. Simon dated July 28, 2003 is attached herein as Exhibit "E").

23. Because Dr. Farber clearly magnified the nature and extent of plaintiff's alleged injuries based on speculations, his opinions should be deemed unreliable and irrelevant and should not be permitted to testify. Therefore, Dr. Farber should not be permitted to testify as to occipital nerve neuralgias and causation.

24. Furthermore, the testimony by Dr. Farber regarding the causation of plaintiff's post traumatic stress disorder and occipital neuralgia will only serve to confuse and mislead the jury in determining issues in this case based on an improper basis. Defendant will be unfairly and severely prejudiced if Dr. Farber is permitted to testify.

25. Secondly, as part of her claim, plaintiff alleges that she sustained permanent injuries to her right eye, specifically, a permanent blood streak in the right eye with scarring of the right eyelid. .

26. Plaintiff visited an eye doctor, Dr. Walter Harris on December 8, 2000, approximately one week after the alleged incident of December 2, 2000. In his treating notes, Dr. Harris merely makes some indecipherable notations regarding the conjunctiva of the right eye. (A true and correct copy of Walter Harris, M.D.'s treating record, dated December 8, 2000 is attached hereto as Exhibit "D").

27. According to plaintiff, Dr. Harris noted that plaintiff had "blood streaks" in her right eye. (See Exhibit "A"). However, plaintiff did not seek further consultations or treatment with any eye specialists following her visit with Dr. Harris.

28. Under Pennsylvania law, unequivocal medical testimony is necessary to establish the causal connection in cases where there is not obvious causal relationship between the accident and the injury. In re Paoli Railroad Yard PCB Litigation, 2000 WL 1279922 (E.D. Pa. 2000); citing Niklaus v. Vivadent, Inc., 767 F. Supp. 94,96 (M.D. Pa. 1991),

aff'd, 986 F.2d 1409 (3d. Cir. 1993). "Such testimony is needed to establish that the injury in question did, with a reasonable degree of medical certainty, stem from the [complained of] act." Id.

29. In this case, there is no documentary evidence either from Dr. Harris or any eye specialist that the blood streaks in the eye and the scarring of the inner portion of her eyelid were causally related to the incident in question. In fact, there is no notations from Dr. Harris regarding the subject incident. (See Exhibit "D").

30. Therefore, because plaintiff has failed to substantiate her claim with accurate and reliable medical expert reports and/or testimony regarding causation, plaintiff should be precluding from testifying as to her claim of a right eye injury.

Respectfully submitted,

MINTZER, SAROWITZ, ZERIS,
LEDVA & MEYERS

BY:_____
DANIEL J. McCARTHY, ESQUIRE
Attorney for Defendant(s), J.C. PENNEY
COMPANY, INC. d/b/a J.C. PENNEY
Identification No.: 41440
22nd Floor
1528 Walnut Street
Philadelphia, PA 19102
(215) 735-7200
MSZL&M File No. 3700.0056

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIM LASSITER-WADDELL, <br><br> vs. <br><br> J.C. PENNEY COMPANY, INC. AND J.C. PENNEY | Civil Action No. 02 CV 3213 (MAM) |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE
TO PRECLUDE THE TESTIMONY FROM PLAINTIFF'S PROPOSED EXPERT WITNESS,
ROGER E. FARBER, M.D., FAAN AND TO PRECLUDE PLAINTIFF'S TESTIMONY
REGARDING HER CLAIM OF A RIGHT EYE INJURY

I.   **FACTUAL BACKGROUND:**

Plaintiff filed this instant action claiming that defendant negligently, carelessly and wantonly controlled and maintained its premises by negligently hanging various signs throughout the store and creating a highly dangerous and defective condition for plaintiff and other shoppers. Specifically, on December 2, 2000, plaintiff claims that she was lawfully on the premises of the defendant as a business invitee when a sign fell and struck plaintiff. (See Exhibit "A"). As a result of the alleged incident, plaintiff claims that she sustained various injuries, including a post-concussive syndrome with ongoing severe headaches, episodes of left sided paralysis, herniated disc at L4-5 with impingement on the nerve root causing a left lumbar radiculopathy, arthroscopic surgery of the left knee involving resection of the medial synovial plica and chondroplasty of the medial femoral condyle, and permanent blood streak in the right eye with scarring of the right eyelid.

Following the incident, plaintiff claims that she sought medical attention from various

medical providers, including Dr. Roger E. Farber, M.D. since May 21, 2002. Dr. Farber specializes in the treatment of headache and neurologic pain, general neurology and neurosonology at Pennsylvania Headache and Pain Center, PC. (See Exhibits "C" and "D"). When plaintiff presented to Dr. Farber with complaints of chronic pain, Dr. Farber diagnosed plaintiff as suffering from occipital nerve neuralgia. Plaintiff received series of occipital nerve blocks from Dr. Farber. On July 9, 2003, Dr. Farber diagnosed plaintiff with "post-traumatic stress syndrome". However, at her deposition, plaintiff never testified that she was suffering, in fact, from psychologic injuries resulting from the incident. Moreover, no other doctors gave a history of psychologic injuries resulting from the incident.

During the course of discovery, plaintiff has produced the reports of Dr. Farber, dated May 21, 2002 and July 9, 2003. (See Exhibits "B"and "C"). However, plaintiff never produced Dr. Farber's Curriculum Vitae in support of his qualifications as an expert in neurology or psychology/psychiatry. Therefore, the present Motion before the Court seeks to preclude plaintiff from introducing the expert opinion from Dr. Farber.

Dr, Farber is not qualified to render such a diagnosis of post traumatic stress disorder because it is outside of his field of expertise. Furthermore his opinions are based on a completely erroneous history. According to Plaintiff's Complaint, plaintiff was allegedly struck by a sign and not a "big block a couple inches thick" which supposedly fell approximately 20 to 30 feet from the ceiling, which Dr. Farber indicates in his report of May 2002. Secondly, there are no diagnostic testings revealing "a swelling of the brain". To the contrary, plaintiff's MRI and CAT scan of the brain were normal, a fact which Dr. Farber later in his report of July 2003 acknowledges. Furthermore, Dr. Farber indicates that plaintiff "was a person who has not been injured before, but on examination now had significant tenderness in both greater occipital nerves and increased tone and tenderness in

both of the trapezii". (See Exhibit "C"). To the contrary, plaintiff's medical documents show that plaintiff did, in fact, sustained pre-existing injuries and was under treatment for same resulting from a motor vehicle accident on May 26, 2000, approximately seven (7) months prior to the incident in question. (See Exhibit "E"). Therefore, because Dr. Farber's causation opinion relative to his diagnosis of occipital nerve neuralgias is clearly based on speculations, Dr. Farber's testimony is wholly unreliable.

Additionally, as part of her claim, plaintiff alleges that she sustained permanent injuries to her right eye, specifically, a permanent blood streak in the right eye with scarring of the right eyelid. Plaintiff visited an eye doctor, Dr. Walter Harris on December 8, 2000, approximately one week following the alleged incident. (A true and correct copy of Walter Harris, M.D.'s treating record, dated December 8, 2000 is attached hereto as Exhibit "D"). In his treating notes, Dr. Harris makes some indecipherable notations regarding the conjunctiva of the right eye. (See Exhibit "D"). According to plaintiff, Dr. Harris noted that plaintiff had "blood streaks" in her right eye. However, plaintiff did not seek further consultations or treatment with any eye specialists and has never produce a narrative report from Dr. Harris or any eye doctor which states that such an injury was caused by the incident in question. Her claim of permanent damage and causation is not substantiated by any medical expert reports and/or testimony. Therefore, plaintiff should be precluding from testifying as to her allegations of right eye injury.

## II.  LEGAL ARGUMENT:

### A.  Legal Standard for Admission of Expert Testimony

The United States Supreme Court addressed the issue of admissibility of expert scientific evidence under Rule 702 of the Federal Rules of Evidence in the matter of <u>Daubert v. Merrell Dow Pharmaceuticals</u>, Inc., 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Federal Rules of Evidence 702 governs testimony by experts and reads as follows:

> If scientific, technical or other specialized knowledge beyond a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product or reliable principles and methods, and (3) the witness has applied the principles and methods reliable to the facts of the case.

In <u>Daubert</u>, the Supreme Court explained that the language of Rule 702 requiring the expert to testify to scientific knowledge means that the expert's opinion must be based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation". <u>Daubert</u>, 113 S.Ct. at 2795. An expert must have "good grounds" for his or her belief for it to be considered "reliable". <u>Id.</u>

Therefore, under <u>Daubert</u>, the trial court must engage in a two-step inquiry: (1) the proffered expert must be qualified to express an opinion and (2) the proffered expert opinion must be reliable. <u>Id.</u> at 592; see also In <u>re TMI Litig.</u>, 193 F.3d 613, 663 (3rd Cir. 1999); <u>In re Paoli Railroad Yard PCB Litigation</u>, 35 F.3d 717,741 (3d. Cir. 1994); citing <u>Paoli I,</u> 916 F.2d 829, 855 (3d. Cir. 1990).

Under Federal Rules of Evidence 104(a), the trial court must makes a preliminary determinations whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. See <u>Daubert</u>, <u>supra.</u> The preliminary task insures that the testimony meets a minimum threshold of reliability and relevance.

Holbrook v. Lykes Bros. Steamship Co., Inc., 80 F.3rd 777, 780 (1996). Pursuant to F.R.E. 104(a), the trial court also shall determine whether the testimony to be given is admissible under F.R.E. 702.

    **1.**    **Dr. Roger E. Farber is not a qualified expert in the field of psychiatry and/or psychology, and therefore should be precluded from testifying as an expert witness.**

Although an expert's testimony is not limited to the area in which he or she has specialized, the party offering the expert must demonstrate that the expert has the necessary expertise to provide reliable evidence. Ferris v. Pennsylvania Federation Brotherhood of Maintenance of Way Employees, 153 F. Supp.2d 736, 743 (E.D.Pa. 2001); citing Burton v. Danek Medical, Inc., 1999 WL 118020 (E.D. Pa. March 1, 1999). In Burton, the Court concluded that a neurologist is not qualified to testify about the causation of injury in a case involving spinal fusion surgery where the neurologist had no experience or training in the area of spinal surgery. Id. If the expert testimony falls outside a witness' expertise, the Court should exclude it. Ferris, supra.; citing In re Diet Drugs Prod. Liab. Litig., 2000 WL 962545 at *3 (E.D. Pa. June 28, 2000).

In Ferris, plaintiff attempted to introduce the testimony of his treating physician to establish that plaintiff " has suffered from intense headaches, insomnia, depression, and sexual dysfunction and that his symptomology is causally connected" to the conduct of the defendant. Id. at 742. At the Daubert hearing, it was established that plaintiff's expert had been trained and spent most of his career practicing as a pathologist. Id. The doctor changed fields and began specializing in pain management, including hands-on therapy with moist heat, electrical stimulation and trigger point injections as well as join manipulations. Id.

The Court, in Ferris, determined that because of the relationship between pain management and anxiety disorder and depression, plaintiff's expert might, in certain circumstances, be permitted

to testify with respect to the symptoms of depression and anxiety disorder and whether one of his patients presented with such symptoms. Id. at 744. However, because plaintiff's proposed expert has no expertise in the diagnosis and treatment of depression and/or anxiety disorder, and no expertise in the causes of those ailments, he would not be permitted to testify with respect to any causal relationship between plaintiff's symptoms or his diagnosis and the conduct of the defendants. Id. at 744. Furthermore, the Court opined that given the complex physical and psychological injuries that plaintiff allegedly suffered, plaintiff's treating doctor would not be permitted to testify as a lay witness under Rule 701. Id. at 745.

In the instant matter, Dr. Farber does not, under Daubert, have the requisite qualifications and/or expertise in the diagnosis "post traumatic stress syndrome". Plaintiff never produced Dr. Farber's Curriculum Vitae in support of his qualifications as an expert in the field of neurology or even in the field of psychology/psychiatry within the discovery period. However, Dr. Farber's letterhead indicates that he specializes in the treatment of headache and neurologic pain, general neurology and neurosonology at Pennsylvania Headache and Pain Center, PC. (See Exhibits "B" and "C"). When plaintiff presented to Dr. Farber with alleged chronic headaches, Dr. Farber initially diagnosed plaintiff as experiencing symptoms of "occipital nerve neuralgias". (See Exhibit "B"). Plaintiff was treated with series of occipital nerve blocks. On July 9, 2003, plaintiff continued to complain of headaches, and Dr. Farber diagnosed plaintiff as also suffering from post traumatic syndrome and causally related her symptoms to the incident in question:

> "Essentially then we have a woman who clearly is having a great deal of psychic stress over the whole thing. One would label this a post-traumatic stress disorder. In addition, she has had the obvious injury to her head and neck with occipital neuritis predominating..." "She is a bright woman and well motivated to get well but still has that portion of her complaints that are the post-traumatic stress complaints, that need to be addressed. All of this is due to the incident at J.C. Penny's with the object falling and hitting her; and all opinions are expressed to a reasonable degree of medical certainty."

(See Exhibit "C").

Plaintiff never alleged in her deposition testimony that she was suffering from post-traumatic stress syndrome as a result of the incident. In fact, Dr. Farber comments that plaintiff has not treated with a psychiatrist but recommends that plaintiff do so. There is no documentary evidence that any other doctors gave a history of psychologic injuries resulting from the incident. Therefore, like the Ferris case and the Burton case cited above, Dr. Farber should not be permitted to give an unreliable expert opinion on the diagnosis and causation of post traumatic stress syndrome and alleged physical conditions allegedly suffered by plaintiff when he is *not* qualified to testify outside of his field of expertise. Dr. Farber's conclusions are clearly based on unsupported speculations.

Moreover, Dr. Farber should not be permitted to give his opinion as a lay person even under F.R.E. 701. F.R.E. 701 governing opinion testimony by lay witnesses reads as follows:

> If the witness is not testifying as an expert, the witness' testimony in form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.

Clearly, the complexities of plaintiff's alleged physical and psychological injuries are based on specialized scientific knowledge and beyond the scope of a layperson's understanding. Therefore, Dr. Farber's testimony on the issue of post traumatic stress syndrome would be unreliable and irrelevant to this case.

**2.    Plaintiff should be precluded from proffering the expert testimony of Dr. Roger E. Farber because his expert opinion is based on inaccurate factual evidence.**

Under Daubert, the trial court must engage in a two-step inquiry: (1) the proffered expert

must be qualified to express an opinion and (2) the proffered expert opinion must be reliable.  Id. at 592; see also In re TMI Litig., 193 F.3d 613, 663 (3rd Cir. 1999).  Under F.R.E. 702, the qualified expert may testify if the testimony is based upon sufficient facts or data.

Even if Dr. Farber may be qualified to testify as an expert in the field of neurology, in this case, he relied on inaccurate factual evidence to derive at his conclusion.  In his report dated May 21, 2002, Dr. Farber states, inter alia, the following history:

> "Kim is a 33 year old.  **December 2, 2000 she was hit by a big block a couple inches thick with metal around the outside.  It fell many feet, probably 20-30 feet, from the ceiling of a shopping center** and was hit in the right occipital and also over the frontal area; some hemorrage in and around the eyes and did not require sutures.  She could not see out of that eye for a while. ... **On MRI of the head, they saw swelling of her brain; she cannot find the films or the reports...**"

(See Exhibit "B", emphasis added).   Thereafter, in what appears to be an addendum on July 9, 2003, Dr. Farber states, inter alia, as follows:

"I am responding to your request of June 24, 2003.  I have reviewed all of the considerable records you sent in my direction. **This woman first saw me on May 21, 2002.  In December 2, 2000, she said that there was a block that fell from the ceiling; metal was around the outside of this.  It was plexi-glass but struck her hard causing some degree of laceration.** It struck her hard causing some degree of laceration.  It struck her on the right occipital, then veered forward over the face.  She did have some swelling and closure of one eye and was markedly shaken up by the whole affair.  **She said that an MRI stated that she had swelling of her brain, but the report does not reflect that, nor does the CAT scan show anything abnormal in her head.  The spine MRI is said to show a small L4-5 disc herniation but nothing in the thoracic and cervical spines.** She has noted that her legs would keep giving out on her.  She has pain every day in right greater occipital nerve distribution..."

(See Exhibit "C", emphasis added ).

There was never any dispute as to whether plaintiff was allegedly struck by a plexiglass sign holder or a ceiling block. Plaintiff's own Complaint alleges that a sign holder struck her face and head.  Therefore, Dr. Farber's opinions, from the very beginning, were based on inaccurate factual basis, magnifying the nature and extent of plaintiff's alleged injuries.

Secondly, in his report of July 9, 2003, Dr. Farber amends his report to read that the MRIs of the brain, cervical spine and thoracic spine were normal, yet he opines that she suffered from "obvious injury to her head and neck with occipital neuritis predominating" but does not explain his methodology underlying his conclusions. He finally notes on July 2003 that the MRI of the brain which supposedly revealed swelling of her brain was inaccurate; MRI and the CAT scan of the brain were normal.

Finally, Dr. Farber causally relates the diagnosis of occipital nerve neuralgias to the incident in question, noting that plaintiff "have never been injured before". (See Exhibit "C"). To the contrary, plaintiff's medical documents show that plaintiff was involved in an auto accident on May 26, 2000 and was under treatment for same. (See Exhibit "E"). Therefore, because Dr. Farber's opinions regarding occipital nerve neuralgias are wholly unreliable. Because Dr. Farber's opinion on the issue of medical causal relationship is clearly nothing more than a net opinion based on unsupported speculation, Dr. Farber should not be permitted to testify.

**B.    Plaintiff's testimony regarding her claim of a right eye injury resulting from the incident should be precluded because plaintiff failed to provide proof of medical causation.**

Under Pennsylvania law, unequivocal medical testimony is necessary to establish the causal connection in cases where there is not an obvious causal relationship between the accident and the injury. In re Paoli Railroad Yard PCB Litigation, 2000 WL 1279922 (E.D. Pa. 2000); citing Niklaus v. Vivadent, Inc., 767 F. Supp. 94, 96 (M.D. Pa. 1991), aff'd, 986 F.2d 1409 (3d. Cir. 1993). "Such testimony is needed to establish that the injury in question did, with a reasonable degree of medical certainty, stem from the [complained of] act." Id. Expert medical testimony on causation requires

the witness to offer expert medical testimony on the injury itself and the relationship between the injury and the alleged cause. Id. "Consequently, an expert offered by plaintiffs on the issue of causation in this case must be an expert in the diagnosing, and in determining the cause of, [the] injuries [at issue]." Id.

Here, plaintiff claims that Dr. Harris noted some blood streaks on the conjunctiva of the right eye on December 8, 2000. Plaintiff visited Dr. Harris approximately one (1) week after the alleged incident. Plaintiff did not seek further consultation or treatment from any eye specialist, including Dr. Harris. Moreover, there is no documentary evidence either from Dr. Harris or any eye specialist that the blood streaks in the eye were causally related to the incident in question.

However, plaintiff claims that she is suffering from a permanent scarring around the inner portion of her eyelid as a result of the incident. Again, no documentary evidence either from Dr. Harris or any eye specialist indicated that 1) plaintiff suffers from a permanent scarring around the inner portion of her eyelid and 2) whether such injury was causally related to the incident in question.

As stated in Niklaus, supra, medical testimony is needed to establish that plaintiff's injury in question, did with a reasonable degree of medical certainty stem from the alleged incident. In this case, plaintiff failed to substantiated her claim of causation with medical expert reports and/or testimony. Therefore, plaintiff should be precluding from testifying as to her allegations of a right eye injury.

**III.    CONCLUSION**:

Because Dr. Farber's conclusions are unreliable and suspect, he should not be permitted to testify at trial.  Therefore, the Court should grant defendant's Motion in Limine Precluding the Testimony of Dr. Roger E. Farber.

Because plaintiff failed to establish causation with medical expert testimony in support of her claim of a right eye injury, plaintiff should be precluded from testifying regarding the right eye.

        Respectfully submitted,

        MINTZER, SAROWITZ, ZERIS,
        LEDVA & MEYERS


BY:_____

        DANIEL J. McCARTHY, ESQUIRE
        Attorney for Defendant(s), J.C. PENNEY COMPANY, INC. d/b/a J.C. PENNEY
        Identification No.: 41440
        22nd Floor
        1528 Walnut Street
        Philadelphia, PA  19102
        (215) 735-7200
        MSZL&M File No. 3700.0056

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIM LASSITER-WADDELL,<br><br>vs.<br><br>J.C. PENNEY COMPANY, INC. AND J.C. PENNEY | Civil Action No. 02 CV 3213 (MAM) |

### ORDER

**AND NOW,** on this _____ of _____, 2003, upon consideration of defendant, J.C. Penney Company, Inc.'s Motion in Limine to Preclude Proposed Testimony from Plaintiff's Expert, Roger E. Farber, M.D., FAAN and to Preclude Plaintiff's Testimony Regarding Her Claim of a Right Eye Injury, and Plaintiff's response, if any, thereto; it is hereby **ORDERED** and **DECREED** that defendant's Motions are GRANTED, and Roger E. Farber, M.D., shall be precluded from testifying at trial and Plaintiff is precluded from testifying as to her claim of a right eye injury.

BY THE COURT:

_____
J.